UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
99 FEB 18 AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

WAYNE MAY, )
 )
    Plaintiff, )
 )
vs. ) Civil Action No. CV97-S-3075-NE
 )
CITY OF ATHENS; OFFICER )
CHRISTOPHER M. SLATON; )
LT. ANTHONY PRESSNELL; )
OFFICER BRETT M. CONSTABLE, )
 )
    Defendants. )

ENTERED
FEB 1 8 1998

## MEMORANDUM OPINION

This action arises from plaintiff's arrest on the charge of driving under the influence of alcohol. "[P]laintiff does not contest the reasonableness of the original arrest." (Brief in opposition to summary judgment at 1.) Rather, he alleges violations of state law and 42 U.S.C. § 1983, because he "was handcuffed and incarcerated for approximately nine hours" after two tests conducted subsequent to his arrest failed to indicate the presence of alcohol in his blood. (Id.) All defendants have moved for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes those motions are due to be granted as to plaintiff's federal claims, and the remaining claims remanded to state court.

### I. FACTS

After leaving work in Waynesboro, Tennessee on November 17, 1994, Wayne May headed for an area restaurant. He wasn't hungry;

15

he was thirsty. He drank "two Budweiser beers." (Plaintiff's deposition at 34-35, 53-54.) He then drove to Decatur, Alabama, to visit a friend, arriving about 8:00 p.m. (*Id.* at 57.) During the next hour, they "reminisced old times" and May "drank half of [another] can" of beer. (*Id.* at 58.) Afterwards, May drove to a "Waffle House" in Decatur. (*Id.* at 61.) He left the restaurant around 11:00 p.m., with the intention of returning to his home in Tennessee, roughly 65 miles away. (*Id.* at 68.)

May drove North on Interstate 65, but "dozed off a couple of times" and "decided it would be best ... to get off the road ...." (*Id.* at 69.) He left the interstate at its intersection with U.S. Highway 72 in Athens, Alabama, and parked his car in the grass on the side of the on-ramp. (*Id.* at 73-74.) He left the car running, reclined his seat to a horizontal position, and fell asleep. (*Id.* at 74-75.)

May was awakened by a knocking at his window and a bright light in his eyes. (*Id.* at 78.) Athens police officer Christopher Slaton asked May to get out of his vehicle. (*Id.* at 79.) Officer Brett Constable pulled up about the time May stepped out, and saw him stumble. (*Id.* at 84; Constable deposition at 49, 51-52.)

Officer Slaton detected the odor of alcohol, and asked May if he had been drinking. May admitted "yes, I had a couple of beers." (May dep. at 82; Slaton affidavit ¶ 84; Constable deposition at 53). Constable observed that May was disoriented, had bloodshot

2

eyes, and his gait was slow and unsteady. (Constable depo. at 55.) May admits he was "groggy" and "not too stable." (May depo. at 80.) Slaton began to administer field sobriety tests, first asking May to stand on one leg. (Slaton affidavit ¶ 5.) May did so only for a few seconds, and admits he "really couldn't balance that well." (Id. at 88, 90.) Slaton allowed May to repeat the test but, again, he was unable to maintain balance for more than a few seconds.[1] (Id. at 95-96.)

While May attempted field sobriety tests, officer Constable found a six-pack of beer, with one beer missing, underneath May's vehicle. (Id. at 92-94, 110-11; Constable depo. at 68-70.)

May failed two additional field sobriety tests,[2] and Slaton placed him under arrest for driving under the influence of alcohol. (May depo. at 97-107.) Slaton handcuffed May's hands behind his back and transported him to the Athens Police Department, where he was fingerprinted, photographed, and booked on the charge. (Id. at 109-10, 113.)

Two "Intoxilizer 5000" tests also were administered at the police station.[3] The first registered .000. (Id. at 125.) Officer

---

[1] Tests conducted by the National Highway Traffic Safety Administration indicate that a person under the influence of alcohol will be unable to balance on one leg for more than twenty seconds. (Constable deposition at 63-64.)

[2] A heel-to-toe, straight-line walking test, and, a horizontal gaze nystagmus test (in which May was directed to hold his head steady, while following with his eyes officer Slaton's pen, as it was moved from side-to-side).

[3] A person then was presumed by Alabama law to be "under the influence of alcohol" if there were "0.10 percent or more by weight of alcohol in his blood" (Alabama Code § 32-5A-191(a)(1) (1975)(1989 Replacement Vol.)) as determined by "[c]hemical analyses of the person's blood, urine, breath or other bodily substance" (id. § 32-5A-194(a)(1) (emphasis supplied)) performed in accordance

3

Slaton conferred with Lieutenant Anthony Pressnell, and administered a second test. It also registered .000.[4] (*Id.* at 127-29.)

"After the testing, Mr. May demanded that he be released." (Slaton affidavit ¶ 8.) Officer Slaton explained he could not perform the judicial function of dismissing charges following a valid arrest. (*Id.*) Instead, May was given the name and telephone number of a bail bondsman. (May depo. at 130.) The bondsman refused to sign as surety, however, because May was not an Alabama resident. (*Id.* at 132.) Consequently, officer Slaton again handcuffed May and transported him to the Limestone County jail. (*Id.* at 133-37.) Slaton did request that the jailer allow May to call his wife at 6:00 a.m., to arrange for a bond. (*Id.* at 137.) May remained at the Limestone County jail until 9:45 a.m. on November 18, 1994. (*Id.* at 140, 144.)

Plaintiff appeared in Athens Municipal Court for trial on December 14, 1994. (*Id.* at 146-47.) The DUI charge was dismissed at that time. (*Id.*)

May originally filed suit in the Circuit Court for Jefferson County, Alabama on November 18, 1996, asserting only state law

---

with testing procedures approved by the state department of forensic sciences. One such approved method of determining blood alcohol content was by use of an "Intoxilizer 5000" machine. *See* Mayo v. City of Madison, 652 So. 2d 201 (Ala. 1994).

[4] Such results were quizzical because, as the Alabama Supreme Court noted in the *Mayo* case, *supra*, "before and after a breath test, the I-5000 sets itself to zero" — *i.e.*, 0.000 — a synchronization function which amounts "only [to] the setting of a baseline to adjust for the presence of any alcohol in the air of the room." Mayo v. City of Madison, 652 So. 2d at 207.

4

claims.[5] The action was transferred to the Circuit Court for Limestone County, Alabama, on January 31, 1997. May amended his complaint on October 27, 1997, to add, for the first time, a federal claim under 42 U.S.C. § 1983.[6] Defendants removed the action to this court on November 24, 1997.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), Fed. R. Civ. P. (emphasis supplied). The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this

---

[5] The claims alleged were: false arrest and imprisonment (Count I); wrongful arrest (Count II); assault and battery (Count III); and, negligent or wanton failure to train (Count IV).

[6] Count V. The first amended complaint also added a state law, vicarious liability claim as Count VI.

5

burden <u>with</u> or <u>without</u> supporting affidavits. Celotex, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. Jeffery, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, see Brown v. City of Clewiston, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, see Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the

6

"evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

### III. DISCUSSION

Wayne May will concede that Officers Slaton and Constable did nothing wrong prior to obtaining the results of the two Intoximeter (Breathalyzer) tests. In other words, plaintiff does not contest the reasonableness of the original arrest. **The actionable conduct occurred when Wayne May was handcuffed and incarcerated for approximately nine hours _after_ Wayne May twice "blew" 0.00 on the Breathalyzer and the officers concluded that Wayne May was not intoxicated.**

(Plaintiff's brief in opposition to summary judgment, at 1 (emphasis in original).)

#### A.   Slaton, Presnell, and Constable

Christopher Slaton, Anthony Presnell,[7] and Brett Constable[8] contend they are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly

---

[7] May's sole claim against Lt. Pressnell is that, as officer Slaton's supervisor, Pressnell should have instructed Slaton to release May when the intoxilizer tests failed to confirm the presence of alcohol in his blood.

[8] May's claims against officer Constable are based upon these facts: Constable arranged for May's auto to be towed from the scene of arrest; and, he administered both intoxilizer tests.

7

established statutory or constitutional rights of which a reasonable person would have known."

...Unless a government agent's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.

*Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

The Eleventh Circuit applies a two-part test to determine whether a governmental official may successfully assert a qualified immunity defense:

1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred."

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show the lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public officials actions "violated clearly established constitutional law."

*Hudgins v. City of Ashburn*, 890 F.2d 396, 404 (11th Cir. 1989).

Defendants have clearly demonstrated probable cause to arrest May for the offense of driving under the influence of alcohol at the place where he was found: see the facts enumerated in defendants' brief (Doc. No. 10), at 16-17.[9] Moreover, having been

---

[9] This court's holding that, unquestionably, there was probable cause to arrest should be compared to the Eleventh Circuit's much lower standard:

In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only "arguable probable cause," i.e., the facts and circumstances must be such that the officer reasonably could have believed that

8

lawfully arrested, Slaton, Pressnell, and Constable were acting within the scope of their discretionary authority when they refused to release May, simply because the intoxilizer failed to confirm the presence of alcohol in his system. An instructive case, very close on its facts to the present one, is *Brooks v. City of Birmingham*, 584 So. 2d 451 (Ala. 1991). There, the arresting officers

> found Brooks in his vehicle, slumped over the steering wheel, stopped at a traffic light. Books could not speak clearly and was unable to walk. He clearly appeared to be impaired and presented a danger to other motorists. The officers' suspicions about Brooks were further compounded when they detected what they thought was the odor of alcohol. These circumstances clearly presented the officers with probable cause to arrest Brooks for DUI. ... Therefore, Brooks was lawfully arrested and detained....

*Brooks*, 584 So. 2d at 454 (citations omitted). As in the present case, an Intoxilizer 5000 test administered following arrest "showed Brook's blood alcohol content to be 0.0%." *Id.* at 452. Even so, and even though the plaintiff in *Brooks* was diabetic, and apparently suffering from low blood sugar rather than the influence of alcohol at the place of his arrest, the Alabama Supreme Court still affirmed summary judgment against his false arrest claim.

Thus, the burden shifts to plaintiff to demonstrate that the failure to release him, simply because subsequent intoxilizer tests

---

probable cause existed.

Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)(emphasis supplied).

9

failed to corroborate field sobriety tests, "violated clearly established constitutional law."

Plaintiff attempts to demonstrate such a violation by focusing upon that portion of Alabama Rules of Criminal Procedure 4.3(a)(1)(i), providing that:

> (1) A person arrested without a warrant:
>
>    (i) May be cited by a law enforcement officer to appear either at a specified time and place or at such time and place as he or she shall be subsequently notified of and may be released;.... [Emphasis supplied.]

On the basis of that language, plaintiff argues:

> The Athens Police Department mandates that a bond be set for anyone that is arrested unless the person is arrested for a felony, in which case no bond is permitted, or unless a judge decides that a bond is unnecessary. Such a policy is in contravention of Alabama Rule of Criminal Procedure § 4.3(a)(1)(i) which clearly provides for the release of an arrestee on his recognizance without posting a bond.

(Brief in opposition to summary judgment, at 9.)

Plaintiff's contention is specious. Somehow, he interprets the discretionary language of Rule 4.3(a)(1)(i) ("may be released") as giving him an unqualified, mandatory, constitutional right to release without bond. That argument ignores the remaining text of Rule 4.3(a)(1), which vests an officer with discretion to release "upon execution of an appearance bond...."

> (1) A person arrested without a warrant:
>
>    (i) May be cited by a law enforcement officer to appear either at a specified time and place or at such time and place as he or she shall be subsequently notified of and may be released; or

10

>    (ii) May be released by a law enforcement officer upon execution of an appearance bond or a secured appearance bond in an amount set according to the schedule contained in Rule 7.2, and directed to appear either at a specified time and place or at such time and place as he or she shall be subsequently notified of; *or*
>
>    (iii) Shall be afforded an opportunity to make bail in accordance with Rules 4.3(b)(3) and 4.4. ...

Rule 4.3(a)(1), *Ala. R. Crim. P.* (emphasis supplied).

Simple citation to a state rule of criminal procedure does not meet plaintiff's burden of demonstrating a violation of clearly established statutory or constitutional rights.

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.

*Lassiter*, 28 F.3d at 1149 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

Plaintiff does not point to a "concrete and factually defined context" that "make[s] it obvious to all government actors, in the defendant's place," that failure to release a person who has been validly arrested for DUI on the basis of field sobriety tests, but who subsequently passes an intoxilizer test is a violation of federal law. In fact, plaintiff expressly declines to provide any such authority.

> In the present matter, it is unnecessary to point to an opinion issued by a court in the Eleventh Circuit holding that a DUI arrestee has a right to be released on his own recognizance after completely "passing" an

11

Intoximeter test — "blowing triple zeros." The "clearly established law" is found in Rule 4.3(a)(1)(i).

(Plaintiff's brief in opposition to summary judgment, at 16.) As previously noted, however, where facts observed by officers at the scene supply a probable cause basis for arresting an Alabama motorist on the charge of driving under the influence, the mere fact that subsequent tests fail to confirm the presence of alcohol in the motorist's blood does not entitle the person thus arrested to immediate release. *See Brooks v. City of Birmingham, supra.* This court therefore finds that plaintiff has not met his burden of demonstrating a violation of "clearly established constitutional law." Accordingly, Slaton, Pressnell, and Constable are entitled to qualified immunity, and summary judgment is appropriate.

B. **The City of Athens**

1. **Failure to state a claim**

The City of Athens requests summary judgment, principally because May's amended complaint "makes no contention or allegation under § 1983 against the City ... other than an allegation that the City ... is liable under § 1983 on the basis of respondeat superior."[10] (Brief in support of summary judgment at 42.)

"[I]t is well established that a municipality may not be held liable under section 1983 on a theory of *respondeat superior*." *Floyd v. Waiters*, No. 94-8667, 1998 WL 17093 (11th Cir. Jan. 20,

---

[10] Unlike the individual officers, the City of Athens is not entitled to qualified immunity for violations of 42 U.S.C. § 1983. *Heggs v. Grant*, 73 F.3d 317, 319 n.5 (11th Cir. 1996).

12

1998). Rather, "to state a claim against a local governmental body, the complaint must allege that the challenged conduct 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305, 310 (11th Cir. 1989)(emphasis supplied). Plaintiff's complaint makes no such allegation and, accordingly, it is due to be dismissed for failure to state a claim upon which relief may be granted.[11]

### 2. Failure to Prove a Violation of a Protected Right

Athens alternatively moves for summary judgment on the ground that plaintiff cannot demonstrate a deprivation of any constitutional right. (Brief in support of summary judgment at 44.)

> To state a *prima facie* § 1983 claim grounded on a constitutional violation, a plaintiff must allege that 1) the defendant's conduct caused the constitutional violation, and 2) the challenged conduct was "under color of state law."

*Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d at 310. Implicit in that statement of the elements of a *prima facie* case is the requirement that plaintiff offer evidence of a constitutional violation.

---

[11] Plaintiff's complaint also contains a state law claim against the City of Athens for negligent training and supervision of its officers. That claim is wholly separate from plaintiff's § 1983 claim.

A plaintiff may recover against a municipality under § 1983 for failure to train and supervise. Even so, the failure to train and supervise must amount to "deliberate indifference" "to the rights of the inhabitants of the municipality" by policymaking officials. *Floyd v. Waiters*, 1998 WL 17093 at *7. Plaintiff provides no argument or evidence of deliberate indifference, and summary judgment is appropriate, to the extent his complaint arguably may be construed to state a § 1983 claim for failure to train and supervise.

13

May's complaint lists various constitutional rights allegedly transgressed by defendants. Even so, he fails to specify the constitutional provisions implicated when a person is validly arrested upon the basis of facts observed by the police officer and clearly establishing the existence of probable cause — *nota bene* that "plaintiff does not contest the reasonableness of the original arrest"[12] — and detained until bond is posted. Instead, May simply asserts: "Undoubtedly, the incarceration of someone known to be innocent violated various provisions of the constitution." (Brief in opposition to summary judgment at 27.)

May's assertion is frivolous in the context of those events leading to this action. The mere fact that tests performed some time *after* May's arrest failed to confirm the presence of alcohol in his system is not unequivocal proof that he was "innocent"[13]; nor does it establish he was *not* under the influence at the time and place that field sobriety tests were conducted. Rather, such merely is exculpatory evidence affecting the weight a jury may choose to accord other facts observed by the officers at the scene of May's arrest.

Plaintiff bears the burden of demonstrating a constitutional violation. May presents no argument or evidence establishing such a violation, and summary judgment is appropriate.

---

[12] Plaintiff's brief in opposition to summary judgment, at 1.

[13] See note 4 *supra*.

14

### III. SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

Federal jurisdiction over state law claims is governed by 28 U.S.C. § 1367(a), which provides that:

> in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Even so, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This court exercises its discretion, and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, the complaint is due to be remanded to the Circuit Court for Limestone County, Alabama, from which it was removed.

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this the 17th day of February, 1998.

_____
United States District Judge

15